UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEVON M. NORTON, | ) |
| Plaintiff, | ) No. 13 C 8230 |
| | ) |
| v. | ) Magistrate Judge Geraldine Soat Brown |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Devon Norton brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision by the Acting Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), and 1382c(a)(3)(A). (Compl.) [Dkt 1.] Plaintiff filed a memorandum in support of reversing and remanding the decision of the administrative law judge. (Pl.'s Mem.) [Dkt 15.][1] The Commissioner moved for summary judgment (Def.'s Mot.) [dkt 26], and filed a memorandum in support of the motion (Def.'s Mem.) [dkt 27]. Plaintiff replied. (Pl.'s Reply) [Dkt 31.] The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). [Dkt 6.] For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's request for remand is granted.

---

[1] Plaintiff is not required to file a motion, only a brief in support of reversing or remanding the decision subject to review. N.D. Ill. LR 16.4.

1

**PROCEDURAL HISTORY**

Plaintiff applied for benefits on April 13, 2010 (R. 225), later amending her application on April 21, 2010 to allege that she became unable to work because of her disabling condition on January 30, 2009 (R. 232). Plaintiff applied for supplemental security income on April 21, 2010. (R. 234.) Her application for disability benefits was initially denied on July 28, 2010, and again after reconsideration on January 26, 2011. (R. 105-09.) Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on January 28, 2011. (R. 17.) Plaintiff was represented by an attorney and appeared and testified at a hearing held on April 17, 2012. (*Id.*) An impartial medical expert and an impartial vocational expert also testified. (*Id.*)

On September 13, 2012, the ALJ denied Plaintiff's application and found her not disabled under the Social Security Act. (R. 31.) At step one, the ALJ found that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2012, and had not engaged in substantial gainful activity since her alleged disability onset date of January 30, 2009. (R. 19.) At step two, the ALJ found that Plaintiff had several severe impairments, including cervical dystonia, degenerative disc disease, fibromyalgia, morbid obesity, depression, and anxiety. (R. 20.)[2] At step

---

[2] Cervical dystonia is "a type of focal dystonia localized to the neck muscles, causing abnormal jerky turning of the head." *See Dorland's Illustrated Medical Dictionary* 582 (32d ed. 2012) [hereinafter *Dorland's*].

*Dorland's* does not define degenerative disc disease. New York University's Langone Medical Center defines degenerative disc disease as: "This condition causes the spongy layers of cartilage that cushion the bones of the spine to deteriorate, often as a natural part of aging. Over time, changes in the size and resiliency of the discs can cause persistent, aching pain in the back or neck, and may make everyday movements difficult." http://nyulangone.org/conditions/degenerative-disc-disease-in-adults (last visited June 10, 2016).

Fibromyalgia is "pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." *Dorland's* at 703.

three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 20.)

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can only occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; can occasionally balance, stoop but never kneel, crouch and crawl; can frequently reach in all directions except overhead with both upper extremities; must avoid frequent exposure to extreme cold and heat, wetness, humidity, noise vibration, and hazards such as moving machinery or unprotected heights; can perform unskilled work tasks that can be learned by demonstration that involve occasional decision making, occasional changes in the work setting and would not be fast paced or with strict production quotas; and can maintain occasional contact with the general public and occasional interactions with supervisors and co-workers.

(R. 21-22.) At step five, the ALJ determined Plaintiff was unable to perform any past relevant work, but found there were jobs in the national economy she could perform in light of her age, education, work experience, and RFC. (R. 30-31.) The ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from the alleged onset date through the date of the decision. (R. 31.)

Plaintiff requested review of the ALJ's decision by the Appeals Council (R. 12-13), which was denied on September 13, 2013 (R. 1-4). The ALJ's decision is the final decision of the commissioner pursuant to 20 C.F.R. § 404.981, and this court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See also Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## ANALYSIS

Although an ALJ's legal conclusions are reviewed de novo, the ALJ's factual determinations are reviewed deferentially and are affirmed if they are supported by substantial evidence in the record. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (quotation omitted). "A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded." *Id.* The ALJ must build an accurate and logical bridge from the evidence to the conclusions so that the reviewing court may assess the validity of the findings and afford meaningful review. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). The harmless error doctrine applies when reviewing social security decisions. *See, e.g., Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). "[T]he court need not remand if it is satisfied that the error did not affect the outcome." *Mattison v. Astrue*, No. 09-C-60, 2009 WL 2591628, at *1 (N.D. Ill. Aug. 21, 2009) (citing *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003)).

Plaintiff argues this case should be reversed or remanded because the ALJ improperly evaluated the medical evidence, posed hypothetical questions to the vocational expert ("VE") that failed to include all of Plaintiff's limitations and impairments, and improperly evaluated Plaintiff's credibility. (Pl.'s Mem. 12-21.) This court agrees that the ALJ's evaluation of the medical evidence was incorrect. Therefore, remand is required.

4

### 1. Treatment of medical opinion evidence.

Medical evidence in this case came from a number of sources. The ALJ gave "no weight" to any of the opinions submitted by Plaintiff, including Plaintiff's treating doctors, and "great weight" to opinions from non-examining sources. In doing so, the ALJ failed to follow the regulations about evaluation of medical evidence and selectively chose among the opinions that supported her conclusion.

Plaintiff submitted statements and medical records from two treating doctors: Dr. Deborah Hall, who has been treating Plaintiff since November 2010 for cervical dystonia (R. 568-88, 607) and Dr. Abhin Singla, Plaintiff's primary care physician, who had been treating Plaintiff for six years by 2011. (R. 589-606, 700-701.) As discussed in the ALJ's opinion, both treating doctors described Plaintiff's conditions as preventing her from doing even simple, routine work tasks. (R. 24.) The ALJ gave those opinions "no weight." (R. 29.)

The ALJ's explanation of her decision to give no weight to Plaintiff's treating doctors' opinions consisted of concluding that the opinions were "not supported by their own treatment notes and records and thus are given no weight." The ALJ dismissed the treating doctors' opinions as "sympathetic opinions based on the claimant's subjective complaints." The ALJ also discounted Dr. Singla's opinion based on what the ALJ believed was a back-dated prescription for a cane that the ALJ did not believe was required by the medical records. (R. 29.)

That analysis was insufficient. The opinion of a treating medical source is given controlling weight if it is well supported by acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Campbell*, 627 F.3d at 306 (internal quotations omitted). Even if that opinion is not given controlling weight,

5

the ALJ cannot simply disregard it. *See id.* "When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion." 20 C.F.R. § 404.1527(c)(2). These factors include: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ must give good reasons for the weight that she assigns a treating physician's opinion. *Roddy v. Astrue*, 705 F.3d 631, 636-37 (7th Cir. 2013); *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013). Although the regulations permit the ALJ to give "more weight" to an opinion that is in the treating professional's area of specialization (20 C.F.R. § 404.1527(c)(2)(ii)), they do not permit the ALJ to discount completely the treating doctor's opinion, as the ALJ did here, because Dr. Singla is a "primary care physician who is opining about psychological issues." (R. 29.)

The ALJ also gave "no weight" to the consulting medical opinion by Dr. Julian Freeman submitted by Plaintiff (R. 715-719), because, the ALJ said, Dr. Freeman is a specialist in internal medicine and neurology, and not a specialist in psychiatry. (R. 29.) Notably, Dr. Freeman was commenting on a number of medical reports and findings, including the EMG and MRI studies, as well as on the medical interrogatory response by consultant Dr. Sai Nimmagadda, who identified his specialty as "I[nternal] M[edicine]/Pulmonary." (R. 708.) The ALJ considered, and apparently gave "some weight" to Dr. Nimmagadda's interrogatory response, even though that doctor is also not a psychiatrist and did not examine Plaintiff. (R. 25, 29.) In fact, the records reflect that Dr. Nimmagadda's primary specialty is pediatrics, with secondary specialities in allergy and immunolgy. (R. 222.)

In contrast to her treatment of Plaintiff's medical opinions, the ALJ gave "great weight" to the testifying medical expert and the state agency psychological consultants. (R. 29.) She noted that the testifying medical expert, Dr. Kravitz, reviewed the records and had an opportunity to observe Plaintiff at the hearing. (*Id*.) She also stated that "Dr. Kravitz testified that the claimant gave a detailed history at the hearing." (R. 27.) The suggestion that Plaintiff recited her medical history in detail is not correct. Dr. Kravitz remarked that Plaintiff gave a "fairly detailed and cogent history." (R. 62.) In fact, the hearing lasted barely over an hour, with the testimony of the experts taking a great deal of that time. (R. 40- 91.) Plaintiff's testimony consisted of 14 pages of questions and answers about a variety of topics including her work history and current symptoms. (R. 44-58.)

The testifying medical expert substantially relied on reports of consultants who found moderate limitations but who did not examine Plaintiff. (R. 66.) In contrast, Dr. J.B. Goebel, a consulting psychologist who examined Plaintiff, found that Plaintiff had a memory deficiency two standard deviations below the norm, and a GAF of 50. (R. 516-19.) At the hearing, the testifying medical expert, who had not examined Plaintiff, disagreed with Dr. Goebel's conclusions. (R. 69-70.) Dr. Goebel also found that Plaintiff has a marked impairment in social interaction and adaptation (R. 519), a finding that the ALJ did not discuss. (R. 26.)

Medical opinions from examining sources are to be given more weight than opinions from non-examining sources. 20 C.F.R. § 404.1527(c)(1). At the very least, the ALJ should have explained why he did not give Dr. Goebel's opinion more weight than the opinions of the non-examining medical sources, including the testifying medical expert.

The ALJ's treatment of the medical opinions failed to follow the regulations. The case must be remanded for appropriate evaluation of the medical evidence. In addition, Plaintiff raises a

number of other concerns that should be addressed on remand.

## 2. Hypotheticals posed to the VE by the ALJ

Plaintiff argues the ALJ's hypotheticals to the VE failed to include all of Plaintiff's mental impairments, improperly told the VE what jobs the Plaintiff could perform, and inadequately considered Plaintiff's headaches. (Pl.'s Mem. at 17-18.) The Commissioner responds that the hypotheticals were proper because they accounted for Plaintiff's mental functioning by limiting Plaintiff to certain types of work consistent with her mental impairments found in the ALJ's RFC determination. (Def.'s Mem. at 12-13.) The Commissioner also asserts the medical evidence does not support the inclusion of additional limitations because of Plaintiff's headaches. (Def.'s Mem. at 13-14.)

"Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original). However, "[a]n ALJ can rely upon a VE's response to an incomplete hypothetical '[w]hen the record supports the conclusion that the vocational expert considered the medical reports and documents.'" *Jones v. Colvin*, No. 12 CV 50438, 2014 WL 467744, at *12 (N.D. Ill. Feb. 6, 2014) (quoting *Ehrhart v. Sec'y of Health and Human Servs*, 969 F.2d 534, 540 (7th Cir. 1992). "In many cases, imputing knowledge to the vocational expert of everything in the exhibits and testimony from the hearing will be sufficient to allow an ALJ to assume the vocational expert included all of these limitations in his assessment of the number of jobs that the applicant can perform." *Young*, 362 F.3d at 1003. That imputation cannot be made when the evidence fails to show the VE reviewed the Plaintiff's medical history or heard testimony regarding the Plaintiff's

medical problems. *See id.*; *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2015) (holding that when there was no evidence the VE reviewed medical history or heard testimony about various medical limitations, the hypothetical questions should have included the medical limitations).

The hearing transcript suggests the VE was present for the administrative hearing because she was introduced at the beginning of the hearing, and the court will assume that the VE was present throughout and able to hear all of the testimony, although the record does not expressly state that. (R. 41-90.) There is nothing in the record, however, to suggest that the VE reviewed Plaintiff's medical records. Nor did the hearing testimony detail Plaintiff's medical records. As mentioned above, Plaintiff testified about her work experience, her current medications, and her symptoms, but she did not testify in detail about her medical records or the reports of consulting experts. (R. 44-59.) The medical expert himself did not describe Plaintiff's medical records. Thus, the court cannot impute knowledge of the medical record to the VE, and it cannot be assumed that the VE's opinion incorporated all Plaintiff's limitations. The ALJ's hypothetical was required to include all of Plaintiff's limitations.

The ALJ posed the following hypothetical to the VE:

> I'm going to ask that you assume an individual with the claimant's age, education, work experience; this individual could perform light work as defined in the regulations. The individual could perform unskilled work tasks that could be learned by demonstration or in 30 days or less. These tasks would be simple and repetitive and routine in nature. Would such an individual be able to perform any of the claimant's past relevant work?

(R. 83.) The VE responded that Plaintiff's past relevant work would not conform to the hypothetical profile, but that there would be other jobs available. (R. 83-84.) The ALJ's second hypothetical to the VE stated:

9

> I'm going to ask that you once again assume an individual the claimant's age, education, and work experience. The individual would have the residual functional capacity to perform light work as defined in the regulations. The individual could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The individual could occasionally balance and stoop, but never kneel, crouch, and crawl. The individual could frequently reach in all directions, except overhead, with the upper extremities. The individual would need to avoid frequent exposure to extreme cold and heat, wetness, humidity, noise, vibration, and hazards such as moving machinery or unprotected heights. And once again, the individual could perform unskilled work tasks that could be learned by demonstration or in 30 days or less, and the work would be simple, repetitive, routine in nature. Would there be jobs?

(R. 84.) The VE responded that the occasional stooping would preclude light work, but that there would be sedentary jobs available. (R. 85.)

The ALJ followed up by inquiring whether the VE's answers would change if the individual needed a device to assist in ambulation to and from the workstation, to which she replied it would limit the person to a sedentary, clerical job, including the jobs identified. (R. 85-86.) The ALJ further limited the hypothetical individual to occasional decision-making, occasional changes in the work setting, and no fast-paced work or work involving strict production quotas. (*Id.*) The VE responded that her answer would remain unchanged. (*Id.*) Finally, when the ALJ offered a hypothetical limiting the individual to occasional contact with the general public and occasional interactions with coworkers, the VE again responded that her answer would be the same for both the light and sedentary levels. (*Id.*)

Plaintiff argues that the testifying medical expert's opinions on Plaintiff's difficulty with concentration, persistence, pace, adaptation, and social functioning were inadequately provided for in the ALJ's hypothetical questions to the VE. (Pl.'s Mem. at 18. ) That expert, Dr. Kravitz, testified that he agreed with the mental residual functional capacity evaluations found in the record at 8F and 9F. (R. 65-66.) Exhibit 8F, completed by Dr. Mehr, indicates Plaintiff has moderate

10

restrictions of activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. (R. 482.) Exhibit 9F, also completed by Dr. Mehr, indicates that Plaintiff is moderately limited in her ability to understand and remember detailed instructions, moderately limited in her ability to carry out detailed instructions, and moderately limited in her ability to interact appropriately with the general public. (R. 486-87.) As discussed above, Dr. Kravitz did not adopt the limitations of the treating doctors or of the examining consultant Dr. Goebel.

It is not clear that the hypotheticals adequately addressed all of Plaintiff's limitations supported by medical evidence in the record, even those adopted by Dr. Kravitz, especially limitations imposed on Plaintiff by her memory problems, interaction difficulties, depression, and anxiety. *See Yurt*, 758 F.3d at 858-59 (collecting cases) ("But we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.").

On remand, the ALJ must review the medical opinions and evaluate them in the manner required by the regulations. After that evaluation, the ALJ must review the hypothetical questions to ensure that all the limitations the ALJ finds are supported by the evidence are adequately reflected in the hypothetical.

### 3. The ALJ's discussion of Plaintiff's credibility.

The ALJ's credibility analysis of the Plaintiff is "entitled to special deference because the ALJ has the opportunity to observe the claimant testifying." *Jones*, 623 F.3d at 1160. The ALJ's

credibility determinations will only be overturned if they are patently wrong. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

Here, the ALJ's discussion of Plaintiff's credibility is puzzling. The ALJ stated, "I note that the claimant attempted to minimize the nature of this [past] work at the hearing and is a significant credibility factor." (R. 19.) It is difficult to tell to what testimony the ALJ is referring. At the hearing, the ALJ asked Plaintiff when she last worked. Her response was, "October 12 of 2011." She also said that she was doing marketing and was only there for a little under three months. The ALJ then noted Plaintiff had earnings of $11,000 in 2011. Plaintiff also testified that she tried working at various coffee and sandwich shops, but had to quit because of problems (R. 44-46.) In disability hearings as in any case, conflicts between a witness's testimony and the rest of the evidence can undermine the witness's credibility. *See Kadia v. Gonzales,* 501 F.3d 817, 819-820 (7th Cir 2007). On the other hand, attempts by the claimant to work are generally viewed to enhance, rather than undermine, credibility. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (collecting cases). Here, it is not clear what the ALJ was saying.

The Social Security Administration recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the SSA' sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. On remand, the ALJ should re-evaluate Plaintiff's subjective symptoms in light of SSR 16-3p.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for summary judgment is denied. The

case is remanded pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum opinion and order. Judgment is entered in favor of Plaintiff and against the Commissioner.

Date: June 10, 2016

_____
Geraldine Soat Brown
United States Magistrate Judge